NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| STEVEN THEDFORD, | : | |
| Plaintiff, | : | Civ. No. 07-1407 (GEB) |
| v. | : | |
| COMMISSIONER OF SOCIAL SECURITY, | : | **MEMORANDUM OPINION** |
| Defendant. | : | |

**BROWN, Chief District Judge**

This matter comes before the Court upon the appeal of Steven Thedford ("Plaintiff") from the final decision of the Commissioner of Social Security ("Commissioner") that denied Plaintiff disability benefits under the Social Security Act ("the Act") [Docket #1]. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g), and has considered the parties' submissions without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons that follow, the Court will vacate the final decision of the Commissioner, and remand for further administrative proceedings.

**I.    BACKGROUND**[1]

Plaintiff was born on April 4, 1955, and was 49 years old at the onset of this litigation. (Pl.'s Br. at 2.) Plaintiff has a high school education and past relevant work as a

---

[1] The Commissioner "incorporates by reference the procedural history and the statement of facts set forth in Plaintiff's Brief, but does not accept the inferences made by plaintiff." (Opp'n Br. At 2.) As such, this background section summarizes the facts set forth by Plaintiff in his brief, with references to the administrative record where appropriate.

1

contractor/construction worker, specifically in the paving field. (*Id.*) In 1996, Plaintiff had surgery to remove a growth on his hip that caused back pain. (*Id.* at 4.) During that surgery, a nerve in his right leg was severed. (*Id.*) As a result, Plaintiff experienced, and continues to experience, lateral femoral cutaneous nerve syndrome and chronic pain. (*Id.*) Because of these complications, Plaintiff was unable to resume work until approximately November 1, 1999. (ALJ Decision 4/24/02; A.R. 456-461.) Subsequently, Plaintiff was granted disability insurance benefits under the Act for the period beginning on December 29, 1995 and ending on December 31, 1999. (*Id.*) The Administrative Law Judge ("ALJ") who granted Plaintiff's benefits noted that his eligibility for benefits ceased on October 29, 1999, the date on which he returned to work. (*Id.*) Plaintiff continued to work in the paving field until January, 2004, when he injured his shoulder in a fall. (Pl.'s Br. at 4.) As a result of that fall, Plaintiff has been diagnosed with a rotator cuff tear and impingement. (*Id* at 5.) His shoulder injury has been treated with physical therapy and pain medications. (*Id.* at 4.) Plaintiff claims that, because of his leg and shoulder injuries, he has not worked in any field since January, 2004. (*Id.* at 2.) As a result of Plaintiff's hip operation and shoulder injury, he has been diagnosed with a mood disorder having depressive features, and a pain disorder with both psychological and physical factors. (*Id*. at 5.)

      On October 15, 2004, Plaintiff filed the instant application for disability insurance benefits under the Act. (*Id.* at 3.) That claim was denied initially and upon reconsideration. (*Id.* at 2.) Plaintiff then requested a hearing, which was held on August 18, 2006 before Administrative Law Judge Daniel N. Shellhammer. (A.R. at 613.) At the hearing, the ALJ heard testimony from Plaintiff, Dorothy Thedford (Plaintiff's wife), and William Slaven, an independent vocational expert. (A.R. at 613-654.) Following the hearing, in a decision dated

September 1, 2006 (the "Decision"), the ALJ found that Plaintiff was not disabled and denied Plaintiff benefits under the Act.  (ALJ Decision 9/1/06; A.R. at 318-339.)  In the Decision, the ALJ found that the Plaintiff had the following "severe impairments" within the meaning of the Act: (1) right shoulder impingement; (2) sensory nerve injury of the right leg; and (3) a mood disorder.  (A.R. at 338 ¶ 3.)  The ALJ found that none of these severe impairments met or exceeded the limitations listed in the Act and that, based upon the evidence, Plaintiff had the residual functional capacity ("RFC") for light work, diminished by additional limitations.  (A.R. at 331 ¶¶ 3,5.)  Based upon the testimony of vocational expert Slaven and using the Medical-Vocational Rules as a framework, the ALJ found that there are a significant number of jobs in the national economy that Plaintiff could perform.  (A.R. at 331 ¶ 8.)  In his decision, the ALJ cited two examples of jobs the Plaintiff could perform: (1) light assembler under DOT 706.684-082; and (2) telephone answer solicitor under DOT 237.367-046.  (*Id.*)

On September 18, 2006, Plaintiff requested that a Social Security Administration Appeals Council ("Appeals Council") review the ALJ's unfavorable decision.  (A.R. at 317.)  The Appeals Council denied Plaintiff's request for review on February 6, 2007.  (A.R. at 310-312.)  With that denial, the ALJ's decision became the final decision of the Commissioner in Plaintiff's case.  On March 27, 2007, Plaintiff appealed the Commissioner's final decision in this Court.  (Compl.)[Docket # 1.]  In his submissions, Plaintiff argues that the Commissioner's decision is erroneous for the following reasons: (1) the Commissioner's denial is not supported by substantial evidence; (2) the ALJ made errors of both fact and law.  With regard the second argument, Plaintiff specifically alleges that: (1) the ALJ did not properly determine Plaintiff's residual functional capacity; (2) the ALJ's application of the "Grids" was erroneous; (3) the

3

vocational expert's evidence was inadequate or defective; (4) the decision did not properly consider physician evidence, subjective symptoms or limitations, or make credibility findings. (Pl.'s R. 9.1 Letter)[Docket # 10]  Plaintiff asks this Court to reverse the Commissioner's decision and grant him benefits or, in the alternative, reverse the Commissioner's decision and remand for additional proceedings.  (*Id.* at 6.)

In an answer and opposition brief [Docket #'s 6,12.], the Commissioner denies all of Plaintiff's allegations and argues that the Commissioner's decision is supported by substantial evidence, is conclusive, and must be affirmed.

## II.   DISCUSSION

### A.  Legal Standard

A plaintiff may not receive benefits under the Act unless he or she first meets statutory insured status requirements.  A plaintiff must be disabled, which is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  An individual is not under a disability unless "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives or whether a specific job vacancy exist for him, or whether he would be hired if he applied for work."  42 U.S.C. § 423(d)(2)(A).

Regulations promulgated under the Act establish a five-step process for an ALJ's evaluation of a claimant's disability. 20 C.F.R. § 404.1520 (2005). In the first step, the ALJ must determine whether the claimant is currently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is working and the work is a substantial gainful activity, his application for disability benefits is automatically denied. *Id.* If the claimant is not employed, the ALJ proceeds to step two and determines whether the claimant has a "severe impairment" or "combination of impairments." 20 C.F.R. § 404.1520(a)(4)(ii). A claimant who does not have a "severe impairment" is not disabled. *Id.* Third, if the impairment is found to be severe, the ALJ determines whether the impairment meets or is equal to those impairments listed in Appendix 1 of this subpart ("the Listing"). 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is conclusively presumed to be disabled, and the evaluation ends. *Id.*; 20 C.F.R. § 404.1520(d).

If it is determined that the impairment does not meet or equal a listed impairment, the ALJ proceeds to step four, which requires a determination of: (1) the claimant's capabilities despite limitations imposed by an impairment ("residual functional capacity," or "RFC"); and (2) whether those limitations prevent the claimant from returning to work performed in the past ("past relevant work"). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is found capable of performing his previous work, the claimant is not disabled. *Id.* If the claimant is no longer able to perform his prior line of work, the evaluation must continue to the last step. The fifth step requires a determination of whether the claimant is capable of adjusting to other work available in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). The ALJ must consider the RFC assessment, together with claimant's age, education, and past work experience. 20 C.F.R. §

404.1520(g). Thus, entitlement to benefits turns on a finding that the claimant is incapable of performing his past work or some other type of work in the national economy because of his impairments.

The application of these standards involves shifting burdens of proof. The claimant has the burden of demonstrating both steps one and two, i.e., an absence of present employment and the existence of a medically severe impairment. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). If the claimant is unable to meet this burden, the process ends, and the claimant does not receive benefits. *Id.* If the claimant carries these burdens and demonstrates that the impairments meet or equal those within the Listing, claimant has satisfied his burden of proof and is automatically entitled to benefits. *Id.* If the claimant is not conclusively disabled under the criteria set forth in the Listing, step three is not satisfied, and the claimant must prove "at step four that the impairment prevents her from performing her past work." *Id.* Thus, it is the claimant's duty to offer evidence of the physical and mental demands of past work and explain why he is unable to perform such work. If the claimant meets this burden, the burden of proof then shifts to the Commissioner to show, at step five, that the "claimant is able to perform work available in the national economy." *Id.* The step five analysis "can be quite fact specific." *Burnett v. Commissioner*, 220 F.3d 112, 126 (3d Cir. 2000).

### B. Application

#### 1. Vocational Expert Slaven's Testimony Is Not Substantial Evidence

Plaintiff argues that the Commissioner's denial of benefits is not supported by substantial evidence because the hypothetical questions posed to vocational expert Slaven by the ALJ did not accurately reflect all of Plaintiff's impairments. The Court agrees that the vocational

expert's testimony cannot be considered substantial evidence under precedent set by the United States Court of Appeals for the Third Circuit.  As such, the Court concludes that the Commissioner has failed to carry its burden of proof at the fifth stage of the disability analysis, and that remand for further administrative proceedings is appropriate.

As previously noted, at the fifth stage of the disability analysis the Commissioner bears the burden of proving that a "claimant is able to perform work available in the national economy." *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987).  To carry this burden, the Commissioner normally relies in large measure upon the testimony of a vocational expert. *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005).  The Third Circuit has stated that, where the Commissioner's decision rests upon the response of a vocational expert to a hypothetical posed by the ALJ, that "hypothetical question must reflect *all* of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence."  *Ramirez v. Barnhart*, 372 F.3d 546, 552 (3d Cir. 2004) (quoting *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987) (citing *Podedworny v. Harris*, 745 F.2d 210 (3d Cir. 1984) and *Wallace v. Secretary*, 722 F.2d 1150 (3d Cir. 1983)) (emphasis added).  Further, "'great specificity' is required when an ALJ incorporates a claimant's mental or physical limitations into a hypothetical."  *Id.* at 554-555. (quoting *Burns v. Barnhart*, 312 F.3d 113, 122 (3d Cir. 2002)).   Finally, "limitations that are medically supported and otherwise uncontroverted in the record, but that are not included in the hypothetical question posed to the expert, preclude reliance on the expert's response." *Rutherford* 399 F.3d at 554 (citing *Burns*, 312 F.3d at 123).

In this case, the hypothetical questions posed to vocational expert Slaven by the ALJ are insufficient based upon the Third Circuit precedent just discussed. In the Decision, the ALJ specifically found that Plaintiff suffered from a "mood disorder" that rose to the level of a "severe impairment." (A.R. at 338 ¶ 3.) That finding is more fully explained in the "Evaluation of Evidence" section of the Decision, where the ALJ concluded that:

> Based upon a consideration of the relevant issues and factors referenced above, the [ALJ] concludes that the claimant demonstrates a mild degree of limitation in the activites of daily living and social functioning; a moderate degree of limitations in the concentration, persistence and pace area of functioning; and has had no episodes of decomposition.

(A.R. at 332.) Implicitly, therefore, the ALJ found that Plaintiff's "mild degree of limitation in the activities and social functioning," paired with his "moderate degree of limitations in the concentration, persistence and pace area of functioning," resulted in a "mood disorder" that was as "severe impairment." The transcript of vocational expert Slaven's testimony, however, reveals that the hypothetical questions posed by the ALJ did not specifically incorporate Plaintiff's mood disorder as the Third Circuit requires. At the August 18, 2006 hearing, the ALJ posed the following hypothetical questions to Mr. Slaven:

> If I were to ask if hypothetically an individual of similar age, education and past work experience as this particular claimant, and for the moment without regard to limitation, just focusing in on these skills, do any of these skills readily transfer to other either sedentary or light skilled or semi-skilled jobs? (A.R. 643-644.)

> If my hypothetical individual would be limited to only performing jobs that perform one or two step instructions, not complicated or multi-step and working within a defined, well set defined routine, would that hypothetical individual still be able to do this work? (A.R. 646.)

In response to these hypothetical questions, vocational expert Slaven testified that Plaintiff could work as either an "Assembler Small Products I" (DOT 706.684–022) or a "Telephone

Information Clerk" (DOT 237.367-046). (A.R. 645-647.) After vocational expert Slaven had testified to Plaintiff's ability to perform these jobs, the ALJ then posed this final hypothetical question:

> If my hypothetical individual because of pain or discomfort or because of *depression* has difficulty maintaining attention to tasks, such that that individual may have difficulty maintaining attention to tasks for a period of about an hour and a half to two hours, would that have an impact on ability to do any of these jobs? (A.R. at 647.) (emphasis added)

The following exchange between the ALJ and Slaven occurred in response to the preceding hypothetical question:

> [Slaven] Well, if he couldn't maintain his attention for up to two hours then he could not perform work because most jobs are set up that you're working for two hours, maybe two hours and fifteen minutes and then you have a break in the morning, another two hours, lunch break, another two hours, mid-day break, another two hours, end of day.
>
> [ALJ] All right.
>
> [Slaven] So if he can't do attention and concentration up to two hours even on simple tasks you can't work.
>
> [ALJ] Okay. No jobs then?
>
> [Slaven] Yes, Your Honor.

(A.R. at 647.)

      The ALJ's hypothetical questions, noted above, were insufficient. As previously noted, the Third Circuit demands that a hypothetical question posed to a vocational expert by an ALJ contain *all* of a claimants impairments. Further, "'great specificity' is required when an ALJ incorporates a claimant's mental or physical limitations into a hypothetical." *Id.* at 554-555. (quoting *Burns v. Barnhart*, 312 F.3d 113, 122 (3d Cir. 2002)). The hypothetical questions posed to vocational expert Slaven by the ALJ simply do not satisfy these requirements. In his

9

Decision, the ALJ specifically found that Plaintiff suffered from a "mood disorder" that was a "severe impairment." As such, the ALJ was required to include Plaintiff's "mood disorder" in his hypothetical questions to the vocational expert. Indeed, for his hypothetical questions to pass muster, the ALJ was required to incorporate Plaintiff's "mood disorder" with "great specificity." Instead, it appears that the ALJ's hypothetical questions failed to mention that impairment entirely. In the hypothetical questions posed to the vocational expert, only one word - "depression" - was mentioned that even implies the existence of a psychological impairment. Furthermore, the hypothetical question in which the ALJ used the word "depression" came after the vocational expert had stated that Plaintiff could work as either an "Assembler Small Products I" (DOT 706.684–022) or a "Telephone Information Clerk" (DOT 237.367-046). Indeed, when the ALJ raised the issue of "depression," and the shortened attention span that might result from that disorder, Mr. Slaven was of the opinion that there were "no jobs."

In sum, the Court concludes that the hypothetical questions posed to the vocational expert by the ALJ in this case fail to conform to the standards established by the Third Circuit. Therefore, this Court cannot view the vocational expert's testimony and conclusions as substantial evidence. In light of that conclusion, and reviewing the Decision as a whole, it appears that the Commissioner has not carried its burden at stage five of the disability analysis of proving by "substantial evidence" that Plaintiff "is able to perform work available in the national economy." *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). Therefore, the final decision of the Commissioner to deny Plaintiff benefits under the Act will be vacated.

   **2. Remand Is Appropriate**

An award of benefits under the Act is predicated upon a finding that there are no jobs in the national economy a claimant can perform as a result of their impairments.  Because the vocational expert's testimony was flawed and cannot be relied upon, it appears that the administrative record is not fully developed, and that this Court does not have sufficient information to decide whether Plaintiff is entitled to benefits under the Act.  As such, an award of benefits to the Plaintiff by this Court is inappropriate at this time.  Rather, the Court will remand for further administrative hearings consistent with this opinion.  In light of this conclusion, the Court need not address Plaintiff's alternate arguments for relief.

### III.    CONCLUSION

For the foregoing reasons, the Court will vacate the final decision of the Commissioner that denied Plaintiff benefits under the Act, remand this case for further administrative proceedings consistent with this memorandum opinion, and order this case closed.  An appropriate form of order accompanies this memorandum opinion.

Dated: December 19, 2008

             /s/ Garrett E. Brown, Jr.
     GARRETT E. BROWN, JR., U.S.D.J.